IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01233-KLM

JUAN CARLOS LUA, as assignee of David Bowser,

    Plaintiff,

v.

QBE INSURANCE CORPORATION, a foreign corporation,

    Defendant.

_____

## ORDER ON SUMMARY JUDGMENT
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendant QBE Insurance Company's **Motion for Summary Judgment** [#35][1] ("Defendant's Motion") and **Plaintiff's Motion for Partial Summary Judgment Re: the Duty to Defend** [#40] ("Plaintiff's Motion").[2] The Court has reviewed Defendant's Motion [#35] and Plaintiff's Motion [#34], the Responses [#41 and #46], the Replies [#45 and #49], the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, Defendant's Motion [#35] is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion [#40] is **GRANTED**.[3]

_____

[1] [#35] is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Order, and all cited page numbers refer to that docket number.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#15, #16].

[3] The Court notes that both parties violated the KLM Civil Practice Motions Standards [#18]. Defendant's Motion [#35] and Reply to the Motion [#45], as well as Defendant's Response to Plaintiff's Motion [#46], exceed the page limits in Section II.E, and violate other requirements related to summary judgment briefing, including Sections III.B.1 and 4 [#18]. Plaintiff's Response to

# I. Background[4]

Defendant issued David Bowser ("Bowser") a Real Estate Services Errors &
Omissions Insurance Policy, policy number QCR-3030501-01, for the policy period of
January 1, 2016 to January 1, 2017 (the "Policy").  *Def. Motion* [#35] at 4 ¶ 1 and Ex. A.
Mr. Bowser is the named insured.  *Pl. Motion* [#40] at 2 ¶ 1.  The Policy contains a liability
limit of $1 million per wrongful act subject to an aggregate limit in this same amount.  *Id.*
The portions of the Policy relevant to the parties' motions are discussed in the Court's
Analysis in Section III, *infra*.[5]

---

Defendant's Motion [#41] does not admit or deny many of the facts in Defendant's Statement of
Undisputed Material Facts, and states additional facts that should have been in a "Statement of
Additional Disputed Facts" pursuant to Section III.B [#18].  Both parties are admonished in the
future to be familiar with and comply with all of the undersigned's Practice Standards or risk the
striking of the noncomplying document.

[4] Because this Order addresses cross-motions for summary judgment, only undisputed facts
are included in the Background.  *See Boyz Sanitation Serv., Inc. v. City of Rawlins, Wyo.,* 889 F.3d
1189, 1195 (10th Cir. 2018) ("Where, as here, we are presented with cross-motions for summary
judgment, we must view each motion separately, in the light most favorable to the non-moving
party, and draw all reasonable inferences in that party's favor."); *see also Jacklovich v. Simmons*,
392 F.3d 420, 425 (10th Cir. 2014) ("On cross-motions for summary judgment, . . . we must view
the inferences to be drawn from affidavits, attached exhibits and depositions in the light most
favorable to the party that did not prevail."); *Christian Heritage Acad. v. Okla. Secondary Sch.
Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) ("Cross motions for summary judgment are
to be treated separately; the denial of one does not require the grant of another.").  To the extent
there are material, disputed facts, they are addressed in the Analysis section below.  The Court has
cited to the evidence in support of a fact only when quoting the evidence or when the Court deems
the evidence to be particularly instructive as to a fact.

[5] The policy provisions are deemed to be undisputed.  To the extent the provisions were set
forth in Defendant's Statement of Undisputed Material Facts in its Motion [#35], they were neither
admitted nor denied by Plaintiff.  Plaintiff argued only that the Policy speaks for itself and must be
construed as a whole, consistent with the legal principles pertaining to insurance policy construction
and the duty to defend.  *Pl. Resp. Def. Motion* [#41] at 4-5.  Similarly, Plaintiff asserted that other
documents referenced in Defendant's Statement of Undisputed Material Facts and discussed in this
Section speak for themselves.  *Id.* at 6-10.  This does not constitute a valid denial of the facts at
issue or create a genuine issue of material fact.

On January 27, 2016, Plaintiff filed a lawsuit against Mr. Bowser and others, in Adams County District Court, Case No. 16CV30137 (the "Underlying Case"). *Pl. Motion*, [#40] at 3 ¶ 3; *Def. Motion*, [#35] at 7 ¶ 10. The complaint asserted eleven claims: negligence/construction defects, breach of implied warranty, negligent misrepresentation, fraudulent inducement to contract, fraud-false representation, fraud-concealment and/or non-disclosure of material fact, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Colorado Consumer Protection Act, civil conspiracy, and unjust enrichment. *Pl. Motion* [#40], Ex. C. The Underlying Case related to the sale to Plaintiff of a residential property at 1601 Hanover Street, Aurora, Colorado (the "Home"), and the alleged lack of disclosure of construction defects in the Home. *Id.*; *Def. Motion* [#35] at 7 ¶ 11.

The Home was sold to Plaintiff by Bowser, LLC on or around May 13, 2014. *Def. Motion* [#35] at 7 ¶ 12. In May of 2014, Bowser, LLC was owned by Mr. Bowser, who was the only owner of Bowser, LLC during the entirety of its existence and owned all shares of the company. *Id.* at 7 ¶ 13.

Mr. Bowser was the listing agent for the sale of the Home to Plaintiff. *Def. Motion* [#35] at 7 ¶ 14. Mr. Bowser also filled out the Seller's Property Disclosure relating to the Home in connection with the sale to Plaintiff. *Id.* at 8 ¶ 15. Mr. Bowser did not obtain a home warranty for the Home, and he has no knowledge of anyone else purchasing a home warranty for the Home. *Id.* ¶ 17.

On June 2, 2015, more than six months before the filing of the Underlying Case, Plaintiff, through his attorney, David Roth, sent Mr. Bowser a written letter concerning the Home which directed Mr. Bowser to "accept this Communication as a Notice of a Claim."

The letter set forth "claims of construction defects" at the Home that eventually gave rise to the Underlying Case. *Def. Motion* [#35] at 8 ¶ 19 and Exs. E, E-1, F.[6]   The June 2, 2015 letter informed Mr. Bowser that he had "a right to inspect" the Home, "to remedy the problems. . . or otherwise provide a settlement offer." *Id.* at 9 ¶ 20 and Ex. E1.  It also asked that Mr. Bowser "inform any applicable insurance company of this claim." *Id.*  Mr. Bowser testified in his deposition that he understood the June 2, 2015 letter to be an "attorney trying to get me to write a check." *Id.* at 9 ¶ 21 and Ex. C, Bowser Dep. at 37:3-22.

The certified mail receipt on the written notice of claim letter states that it was delivered on June 5, 2015. *Def. Motion* [#35] at 9 ¶ 22 and Ex. E.  Mr. Bowser testified that he received a copy of the June 2, 2015 notice of claim letter in June of 2015. *Id.* at 9 ¶ 23 and Ex. C, Bowser Dep. at 32:4-25, 33:1-19.

By June 18, 2015, Mr. Bowser had consulted with an attorney, Avi Sicker, regarding the allegations of defects in the Home. *Def. Motion* [#35] at 9 ¶ 24 and Ex. C, Bowser Dep. 41:9-18, 43:21-:44:18.   Avi Sicker engaged in email correspondence with Plaintiff's attorney, David Roth, on June 18, 2015, regarding the allegations of defects. *Id.* at 9 ¶ 25. Mr. Sicker forwarded his emails with Mr. Roth to Mr. Bowser on June 18, 2015. *Id.*  The emails Mr. Sicker forwarded to Mr. Bowser included pictures of the defects and a March

---

[6] Two different copies of the June 2, 2015 letter were disclosed. The first, produced by Plaintiff and attached as Exhibit E, contains a certified mail receipt that obscures some of the text on the first page of the letter.  The second, produced by Mr. Bowser and attached as Exhibit E-1, does not contain the certified mail receipt.  Otherwise, the two letters are identical. *Def. Motion* [#35] at 8-9 ¶ 19 and n. 3, Ex. C, Bowser Dep. at 32:4-21.

18, 2015 report from Stone Creek Engineering discussing problems with the Home's foundation. *Id.* at 10 ¶ 26, Ex. C, Bowser Dep. at 42:1-25, 43:1-17, Ex. G.

Mr. Bowser did not send the June 2, 2015 letter to Defendant. *Def. Motion* [#35] at 10 ¶ 27. Rather, Mr. Bowser first reported and tendered defense of the Underlying Case to Defendant more than nine months later, on or about March 24, 2016, when he was served with the original complaint in the Underlying Case. *Id.* at 10 ¶ 28 and Ex. C, Bowser Dep. at 36:15-20; *Pl. Motion* [#40], at 3 ¶ 4.

After investigating and evaluating the allegations and claims of the Underlying Case, Defendant, through Greg Johnson of Specialty Claims Management, denied the tender by letter dated April 19, 2016. *Def. Motion* [#35] at 10 ¶ 29; *Pl. Motion* [#40] at 3 ¶ 5, Ex. 4.[7]

Thereafter, Plaintiff and Mr. Bowser entered into a pair of settlement agreements which resulted in Mr. Bowser admitting liability to Plaintiff in the Underlying Case, paying him $10,000, and agreeing to have the amount of Plaintiff's damages determined by a stipulated judgment or some other appropriate method. *Pl. Motion* [#40] at 3 ¶ 6. Ultimately, as reflected in an Arbitration and Assignment Agreement, Plaintiff opted to have the amount of damages determined through binding arbitration before former Judge James Miller at JAMS in Denver, Colorado. *Id.* at 3 ¶ 7; *Def. Motion* [#35] at 10 ¶ 30.

Mr. Bowser admitted liability on various grounds in the Arbitration and Assignment Agreement, and the Agreement indicated that the total cost to repair and replace the damage to Plaintiff's home was estimated by Demand Construction Services at

---

[7] Plaintiff denies that Defendant conducted a thorough, reasonable, or appropriate investigation into the facts and allegations prior to denying Mr. Bowser's tender. *Pl. Resp. to Def. Motion* [#41] at 9 ¶ 29.

$577,678.55. *Pl. Motion* [#40] at 3-4 ¶ 8. Mr. Bowser also assigned to Plaintiff his rights and claims under the Policy so that Plaintiff could pursue recovery of the arbitration award "and other damages, penalties, and other remedies from the insurer directly." *Def. Motion* [#35] at 10 ¶ 31; *Pl. Motion* [#40] at 2; *First Am. Compl.* [#28] ¶ 12.[8]

Judge Miller issued an arbitration award on July 21, 2017, awarding Plaintiff $577,678.85 in damages and $16,454 in costs, for a total award of $594,132.85. *Def. Motion* [#35] at 10 ¶ 32 and Ex. D.[9] This was the full amount of the estimate by Demand Construction Services. *Pl. Motion* [#40] at 4 ¶ 10. Judge Miller awarded the damages on the claim for intentional misrepresentation. *Def. Motion* [#35] at 10-11 ¶ 33 and Ex. D. He stated that the "negligent misrepresentation and other claims are subsumed by my determination of the intentional misrepresentation claim." *Id.*

Judge Miller also found that "David Bowser, with what I find to be full knowledge of those defects, failed to disclose any of th[e] defects to the Lua's [sic]. Mr. Bowser, in completing the Disclosures upon which the Lua's relied, denied any of the material and serious defects . . . ." *Def. Motion* [#35], at 8 ¶ 16 and Ex. D. He further stated, "[b]ased on all of the evidence, I find that Mr. Bowser individually and on behalf of Bowser, LLC intentionally and fraudulently misrepresented the condition of the home sold to the Lua's

---

[8] Plaintiff characterizes this as a Nunn Agreement. *Pl. Motion* [#40] at 2. The Court notes that the Colorado Supreme Court in *Nunn v. Mid-Century Insurance Company*, 244 P.3d 116, 120-21 (Colo. 2010), held that such agreements are generally enforceable if the insured "proceed[s] successfully with . . . bad faith claims against their insurer, or [if] the third party successfully litigate[s] any of the bad faith claims against their insured by means of an assignment of claims[.]" While it recognized that such agreements may "present[] legitimate concerns regarding the possibility of fraud or collusion," it stated that issue "can be determined at trial like any other issue." *Id.* at 123.

[9] Defendant attached as Exhibit D the Final Award in the arbitration as well as Plaintiff's admission of the genuineness of the document.

[sic].  I find that the Lua's [sic] reasonably relied on Mr. Bowser's misrepresentations and sustained damages."  *Id.* at 11 ¶ 34 and Ex. D.

In the instant case, Plaintiff, as the assignee of Mr. Bowser, sues Defendant for its handling of its defense obligations under the Policy and its claims handling generally, and alleges that Defendant breached its duty to defend.  *First Am. Compl.* [#28] at 2-5.  Plaintiff asserts claims against Defendant for breach of contract, common law bad faith, and statutory bad faith under Colo. Rev. Stat. §§ 10-3-1115 and 1116.  *Id.* at 6-8.  Plaintiff seeks "compensatory damages caused by Defendant's breach of contract and bad faith breach of insurance contract, including but not limited to the full amount of the arbitration award (with post-award interest)".  *Id.* at 9.  Thus, Plaintiff asserts that he does not seek indemnity coverage for the arbitration award.  *Pl. Motion* [#40] at 2; *Pl. Resp. Def. Motion* [#41] at 12.

For its part, Defendant seeks summary judgment because Plaintiff's claims are barred by the date-certain notice requirement and by other policy exclusions.  Defendant does not separately address Plaintiff's claim for breach of the duty to defend.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

### III. Analysis

Plaintiff's Motion [#40] seeks an order from the Court finding, as a matter of law, that Defendant owed and breached a duty to defend Mr. Bowser in the underlying proceedings.

Plaintiff asserts that if Defendant owed Mr. Bowser a duty to defend, it may be held responsible for all damages proximately caused by its breach and has no right to the summary relief requested in Defendant's Motion. *Id.* at 2. Defendant's Motion [#35] seeks an order from the Court finding, as a matter of law, that Plaintiff's breach of contract claim fails because there is no coverage under the Policy. It argues that Plaintiff's common law and statutory bad faith claims fail in the absence of coverage.

## A.   Breach of Contract Claim

### 1.   Whether the Allegations of the Complaint in the Underlying Case Invoked the Duty to Defend

The Court first addresses Plaintiff's argument that the complaint in the Underlying Case alleged facts that required Defendant to defend the lawsuit. "Whether there is a duty to defend is a question of law." *Carl's Italian Rest. v. Truck Ins. Exchange*, 183 P.3d 636, 639 (Colo. 2007).

"The duty to defend pertains to the insurance company's duty to affirmatively defend against pending claims." *Constitution Assocs. v. New Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996). "Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage. . . . ." *Id.* (emphasis in original); *see also Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo. 1991). The duty to indemnify, on the other hand, "relates to the company's duty to satisfy a judgment entered against the insured", and arises only if "the policy *actually* covers the alleged harm." *Id.* In some instances, an insurer will be found to have a duty to defend even though it may have no duty to indemnify. *Compass Ins. Co. V. City of Littleton*, 984 P.2d

606, 613 (Colo. 1999). This is because "[t]he duty to defend is triggered more easily than is the duty to indemnify." *Constitution Assocs.*, 930 P.2d at 563.

The Colorado Supreme Court "has set a high standard for an insurance company seeking to avoid its duty to defend that focuses on an examination of the allegations in the underlying complaint against the insured[.]" *Compass Ins. Co.*, 984 P.2d at 613. "'An insurer's duty to defend arises when the underlying complaint . . . alleges any facts that might fall within the coverage of the policy.'" *Id.* (quoting *Hecla Mining Co.*, 811 P.2d at 1089). This has been referred to as the complaint rule. *Id.* at 615. Thus, "'[t]he actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend.'" *Hecla Mining Co.*, 811 P.2d at 1089 (citation omitted). "Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy." *Id.*

As explained in *Hecla Mining Company*, "'where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.'" 811 P.2d at 1089 (citation omitted). The court further stated in that case that "[d]etermining the duty to defend based on the allegations contained within the complaint comports with the insured's legitimate expectation of a defense, and prevents the insurer from evading coverage by filing a declaratory judgment action when the complaint against the insured is framed in terms of liability coverage contemplated by the insurance policy." *Id.* at 1090.

"The insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003). The Colorado Supreme Court indicated that "[t]he appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated." *Hecla Mining Co.*, 811 P.2d at 1089.

Turning to the Policy in the instant case, the insuring agreement states in **PART 5. INSURING AGREEMENTS AND EXCLUSIONS**:

### A. What We Insure

**We** will pay on **Your** behalf those sums in excess of the Retention and up to the applicable Limit of Liability stated in Item **5.** of the Declarations Page that **You** become legally obligated to pay as **Damages** or **Defense Costs** because of **Claims** as a result of a **Wrongful Act** in performing **Insured Services** for anyone other than **You**.

*Def. Resp. Pl. Mot.* [#46] at 5-6 ¶ 3; Ex. A at 9.

 "Wrongful Act" is defined by the Policy as, among other things, a "negligent act, error or omission". *Def. Resp. Pl. Motion* [#46] at 6-7 ¶ 5; *Def. Motion* [#35], Ex. A at 16. "Insured Services" is defined as "[a]ll services for which a real estate license is required for transactions of properties located in the State of Colorado only, including also property management/leasing, broker price opinions, referrals and escrow agent services. Coverage boundaries extend to continental US for residents of Colorado." *Def. Resp. Pl. Motion* [#46] at 7 ¶ 6; *Def. Motion* [#35], Ex. A at 1.

With the above Policy provisions in mind, the Court turns to whether the complaint in the Underlying Case required Defendant to accept the defense of the Case. The complaint asserted in part that Mr. Bowser, as the listing agent of the Home for Bowser LLC, negligently and/or intentionally failed to make adequate disclosures about the condition of the home and represented that there were no known structural or foundation issues. *See Def. Motion* [#35], Ex. B at 2-3, 6, 8-10. Mr. Bowser was sued for, among other things, general negligence, negligent misrepresentation, and intentional misrepresentation. *Id.* at 7-10. The Court finds that the alleged acts by Mr. Bowser could "potentially or arguably" be "Claims as a result of a Wrongful Act in performing Insured Services", *i.e.,* "services for which a real estate license is required," *Def. Motion* [#35], Ex. A at 1, thus implicating Defendant's duty to defend. *Hecla Mining Co.*, 811 P.2d at 1089. Defendant does not contest this issue and, in fact, has not even addressed it. Accordingly, the Court finds that there was a duty to defend the Underlying Case based on the complaint rule.

Defendant argues, however, that "Plaintiff has not satisfied (or even attempted to satisfy) his burden of proving the Underlying Case against Mr. Bowser fell within the coverage afforded by the Policy." *Def. Resp. Pl. Motion* [#41] at 12. Defendant assumes that "because Plaintiff has failed to establish that the Underlying Case falls within the Policy's insuring agreement, the Motion for Partial Summary Judgment necessarily fails as a matter of law." *Id.* at 3. Except for its argument that Plaintiff's claims are barred by the date-certain notice requirement, Defendant's position is based on a misunderstanding of the law. As explained above, Defendant's duty to defend may exist even in the absence of coverage. Nevertheless, for the purpose of adjudicating both dispositive motions in their

entirely, the Court analyzes the grounds on which Defendant relies in asserting that there is no coverage under the Policy and their impact on the duty to defend.

### 2. Whether Plaintiff's Claims Are Barred By the Date-Certain Notice Requirement

Defendant first argues that is entitled to summary judgment on the breach of contract claim, and can avoid the duty to defend, because the claims against Mr. Bowser were not first made during the policy period under the date-certain notice requirement of the Policy. *Def. Motion* [#35] at 3, 11-15; *Reply Def. Motion* [#45] at 3-11. Defendant argues that this requirement is a threshold to coverage for both defense and indemnity. *Reply Def. Motion* [#45] at 5.

The date-certain notice requirement that Defendant relies on is found in the following Notice provision:

**PART 2. NOTICES**

 **A.** Claims Made and Reported Policy:

This insurance coverage is on a claims made and reported basis. Coverage applies only to those Claims that are first made against **YOU** and reported to **US** during the Policy Period and any Extended Reporting Period as those terms are described in the Policy. Coverage does not apply to any **Wrongful Acts** committed before the **Retroactive Date** stated on the Declarations Page.

*Def. Motion* [#35] at 4 ¶ 2 and Ex. A at 5.

The Policy also contains the following provisions in "**PART 5. INSURING AGREEMENTS AND EXCLUSIONS**":

**C.  Where and When We Insure**

**1. Where we insure**

> The insurance afforded by this policy applies only to **Claims** that are first made and reported to us during the **Policy Period. A Claim** must be made and suit brought, concerning the property located within the United States of America, its territories, possessions or Canada.

> **2. When we insure**

> **a. Claims** First Made

> This insurance applies when a written **Claim** is first made against any of **You** and reported to **us** during the **Policy Period**. To be covered, the **Claim** must also arise from a **Wrongful Act** committed during the **Policy Period**.

> **We** will consider a **Claim** to be first made against **You** when a written **Claim** is first received by any of **You**.

*Def. Motion* [#35], at 5 ¶ 3 and Ex. A, Policy, p. QBE 0011.

"Claim" is defined by the Policy as a "demand for money or services that alleges a negligent act, error, or omission  in the rendering of or failure to render **Insured Services**." *Def. Motion* [#35], at 5 ¶ 4 and Ex. A at 15.   Pursuant to the Policy, a claim is "first made…when a written **Claim** is first received by any of **You**." *Id.* at 5 ¶ 6 and Ex. A at 11.

"**You**" is defined by the Policy to include the "**Named Insured**."  *Def. Motion* [#35], at 6 ¶ 6 and Ex. A at 8.   The Policy's Declarations identify David Bowser as the "Named Insured."  *Id.* at 6 ¶ 7.

Pursuant to the above provisions, the Policy is a claims-made liability insurance policy.  A claims-made policy is "'an insurance policy that provides coverage only if a claim is made during the policy period or any applicable extended reporting period.'"  *Craft v. Philadelphia Indem. Co.*, 343 P.3d 951, 957 (Colo. 2015) (citation omitted).   "A claims-made policy provides potential coverage for claims brought against the insured during the policy period, even if the underlying event giving rise to liability occurred many years in the

past." *Id.* This is in contrast to an occurrence policy, under which liability coverage is provided "only for injury or damage that occurs during the policy term, regardless of when the claim is actually made." *Id.* The Colorado Supreme Court has mandated "strict enforcement" of the notice provisions of claims-made liability insurance policies. *Id.* at 961 (internal quotations and citations omitted). Timely notice during the policy period is thus a "prerequisite to coverage," such that "coverage is only triggered if the insured provides timely notice of the claim." *Id.* at 957.

Defendant's argument that the notice provision was not complied with turns on whether the June 2, 2015, letter from Plaintiff (through his attorney) to Mr. Bowser constituted a "Claim" within the meaning of the Policy. The interpretation of an insurance contract is a question of law that is appropriate for summary judgment. *City of Lakewood v. Safety Nat'l Cas. Co.*, 395 P.3d 1179, 1181 (Colo. App. 2017).

Defendant asserts that the June 2, 2015 letter constituted a "Claim", as it was addressed to Mr. Bowser at his business address and set forth the alleged defects that gave rise to the Underlying Case. *Def. Motion* [#35] at 13; *Reply Def. Motion* [#45] at 9. It is undisputed that Mr. Bowser received the letter in June 2015, that he consulted with a lawyer, Avi Sicker, regarding the letter that month, and that Mr. Bowser viewed the letter "as an attorney trying to get me to write a check." *Def. Motion* [#35] at 14. Additionally, it is undisputed that in June 18, 2015, Mr. Sicker engaged in email communications with Plaintiff's attorney regarding the allegations of defects to the Home and forwarded those communications to Mr. Bowser in an email. The email included pictures of the alleged defects and an engineering report discussing problems with the Home's foundation. *Id.* Since the "claim" in the June 2, 2015 letter was not reported during the policy period,

Defendant asserts that an essential threshold to coverage in this case—that the claim be first *made* and *reported* during the policy period—cannot be satisfied. *Id.* at 3.

The Court acknowledges the foregoing undisputed facts and notes that the letter specifically directed Mr. Bowser to "accept this communication as Notice of Claim." *Def. Motion* [#35], Ex. E1. It further "ask[s] that you inform any applicable insurance company of this claim and provide me with the insurer's name and policy date." *Id.* However, the Court finds that the letter does not constitute a "Claim" against Mr. Bowser.

First, the letter states it is a "Notice of Claim concerning the Residence pursuant to C.R.S. § 13-20-803.5", and lists "claims of construction defects being made with respect to the [Home]." *Def. Motion* [#35], Ex. E1. Section 13-20-803.5, entitled "Notice of Claim Process," provides the claim process required before filing suit against a "construction professional." § 13-20-803.5(1). The letter can thus be construed as a claim for construction defects against a construction professional. Plaintiff is not insured by Defendant under a construction professional's policy, but a real estate services errors and omissions policy, and is not insured with respect to construction defects or any type of construction. As such, "a person of ordinary intelligence" could believe that the letter did not state a claim for "Insured Services" related to Mr. Bowser's services as a real estate agent for which he was required to give notice under the Policy. *See State Farm Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 167-68 (Colo. 1993) ("The insurance contract's terms are construed as they would be understood by a person of ordinary intelligence . . . under a "common-sense analysis;" "'The objectively reasonable expectations of applicants and intended beneficiaries will be honored even though painstaking study of the policy provisions would have negated those expectations.'") (citation omitted).

In contrast, the complaint that was filed in the Underlying Case alleged that Mr. Bowser, individually, committed negligent acts, errors, and omissions in his capacity as the listing agent for the sale of the Home. *Def. Motion* [#35], Ex. B. The complaint clearly constituted a "Claim" within the meaning of the Policy,[10] and Plaintiff gave notice of it to Defendant within the Policy period.

Even if the June 2, 2015 letter could be construed to state a claim against Mr. Bowser for "Insured Services" under the Policy,[11] the Court finds that the letter does not make a "demand for money or services" as required to be a "Claim". *Def. Motion* [#35], Ex. A at 15. The letter informed Mr. Bowser pursuant to § 13-20-803.5 that he had "a right to inspect the property" and "the further right to remedy the problems listed herein or otherwise provide a settlement offer." *Id.*, Ex. E1.[12] The Court agrees with Plaintiff that to state that someone has a right to do something is not to *demand* that it occur. *See Merriam-Webster Online Dictionary*, Definition of "Demand." https://www.merriam-webster.com/dictionary/demand ("to ask or call for with authority; claim as due or just" or

---

[10] Under the Policy, "[f]iling of suit . . . naming the Insured qualifies as a **Claim**." *Id.* Ex. A at 15.

[11] Defendant argues that the letter stated specific allegations against Mr. Bowser that constitute "Insured Services" under the Policy, including an allegation that "[t]he house was advertised as having a heated garage but the heater doesn't work." *Def. Motion* [#35], Ex. E-1 at 2, ¶ 8. The letter further alleged construction defects in connection with the quality of the roof and foundation, and stated as to those defects "[t]he initial inspection stated that the foundation needed to be certified", and that "[a]n engineer hired, by you, certified the roof and foundation when they "could not be certified." *Id.* at 2, ¶¶ 9 and 10.

[12] Section 13-20-803.5 establishes as part of the claim process against a "construction professional" that the claimant provide the construction professional and its agents "reasonable access to the claimant's property . . . to inspect the property and the claimed defect," and states that the construction professional may then "send or deliver to the claimant, by certified mail, return receipt requested, or personal service, an offer to settle the claim by payment of a sum certain or by agreeing to remedy the claimed defect described in the notice of claim." § 13-20-803.5(2) and (3).

"something claimed as due or owed").[13]  While Defendant argues that this is a purely "semantic" argument by Plaintiff, *Reply Def. Motion* [#45] at 10, the Court disagrees. Finally, while the letter asks that Mr. Bowser "inform any applicable insurance company of this claim and provide . . .the insurer's name and policy number," this is also not a demand for "money or services."  *See* https://www.merriam-webster.com/ dictionary/service ("to perform service for: such as. . . to repair or provide maintenance"); https://dictionary. cambridge.org/us/dictionary/english/service ("work done for others, such as cleaning or repairing, caring for a building, or making deliveries").

Accordingly, the Court finds that the June 2, 2015 letter did not qualify as a "Claim" under the Policy.  The first "Claim" that was made against Mr. Bowser was the complaint in the Underlying Case, which he gave timely notice of during the policy period. Defendant's Motion [#35] is thus denied as to the argument that Plaintiff's breach of contract claim fails because there is no coverage under the Policy due to Plaintiff's violation of the date-certain notice requirement.

### 3.  Whether Plaintiff's Claims Are Barred by Applicable Exclusions

### a.  The Fraud Exclusion

The Court now turns to Defendant's other arguments asserting that the Policy does not provide coverage or a duty to defend under these circumstances.  Defendant  first argues that there is no coverage (and thus no duty to indemnify) under the fraud exclusion in the Policy.  *Def. Motion* [#35] at 1, 3, 15-17.  Defendant has the burden of proving the

---

[13] When a term in an insurance policy is not specifically defined in the Policy, the word retains its plain, ordinary, customary, and generally accepted meaning.  *Cruz v. Farmers Ins. Exch.*, 12 P.3d 307, 311 (Colo. App. 2000).  Courts may look to the dictionary definition when construing the plain and ordinary meaning of such a term.  *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 507 (Colo. 2004). Colo. 1989).

applicability of an exclusion to exempt it from liability. *Rodriguez v. Safeco Ins. Co. of Am.*, 821 P.2d 849, 853 (Colo. App. 1991). Defendant must prove "that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretations." *Hecla Mining Co.*, 811 P.2d at 1090.

The fraud exclusion, found in relevant part in **Part 5.B What We Do Not Insure – Exclusions**, states:

> **3. We** are not obligated to pay **Damages** or **Defense Costs** or defend **Claims** for:
>
> ***
>
> **b.** An act or omission that a jury, court or arbitrator could find dishonest, fraudulent, criminal, malicious or was intentionally committed while knowing it was wrongful.
>
> This exclusion shall apply to any of **You** who had knowledge of or participated in the aforementioned conduct….

*Def. Motion* [#35], Ex. A at 11.

Indemnity under the Policy must be evaluated based on the ultimate determination of Mr. Bowser's liability by Judge Miller in the arbitration. *See Cyprus Amax*, 74 P.3d at 301-02. Judge Miller awarded damages against Bowser *only* on Plaintiff's intentional misrepresentation claim, finding that "the negligent misrepresentation and other claims are subsumed by my determination." *Def. Motion* [#35] at 16-17 and Ex. D. Judge Miller also found that Mr. Bowser, with full knowledge of defects in the home, "failed to disclose any of th[e] defects to the Lua's [sic]" and "in completing the Disclosures upon which the Lua's relied, denied any of the material and serious defects . . . ." *Id.* at 17 and Ex. D. He further stated, "[b]ased on all of the evidence, I find that Mr. Bowser individually and on behalf of Bowser, LLC intentionally and fraudulently misrepresented the condition of the home sold to the Lua's [sic]." *Id.* The Court agrees with Defendant that these facts establish that the

entire arbitration award falls within the Policy's exclusion for acts that an arbitrator could find to be fraudulent or intentional.

Plaintiff argues, however, that Judge Miller's findings in the arbitration award should not be relied on by the Court in connection with either the fraud or the Agent-Owned Property exclusion, discussed below. *Resp. Def. Motion* [#41] at 18. Plaintiff submits an affidavit from Brian Murphy, Plaintiff's attorney in the underlying proceedings, stating that Judge Miller's sole charge in presiding over the arbitration was to arrive at a damages figure, not to address liability issues. *Pl. Mot.* [#40], Ex. 3, Murphy Aff. ¶¶ 7-12. Mr. Murphy further states that "[t]o the extent Judge Miller purported to address liability issues as part of his award, he clearly and obviously exceeded the scope of the Arbitration and Assignment Agreement, the purpose of which was merely to arrive at a credible determination respecting the amount of Mr. Lua's damages." *Id.* ¶ 13.

The Court finds that Plaintiff's counsel's belief as to whether Judge Miller exceeded his authority is of no consequence because, under Colorado law, the indemnity and coverage issues must be evaluated based on Judge Miller's findings and award. *See Cyprus Amax*, 74 P.3d at 301-02; *American Fire and Cas. Co. v. BCORP Canterbury at Riverwalk, LLC*, 282 F. App'x 643, 649 (10th Cir. 2008). In coverage litigation, a party may not rely on affidavits to contradict the findings in the underlying matter or retry the case. *BCORP*, 282 F. App'x at 648-49 (finding that the district court erred in considering affidavits that were not presented to the state court jury because they did not "clarif[y] whether the judgment—'the actual liability imposed'—falls within the policy's coverage") (citation omitted). Accordingly, the affidavit of Plaintiff's counsel is improper extrinsic evidence that

cannot be considered by the Court in determining whether there is coverage under the Policy.[14]

Based on the foregoing, the Court finds that Judge Miller's award in the underlying arbitration proceeding establishes that the fraud exclusion is met and coverage and indemnification are barred.  Defendant's Motion is thus granted as to the argument that there is no coverage under this exclusion.

Defendant's Motion [#35] did not address, however, whether the fraud exclusion excused its duty to defend.  The complaint in the Underlying Case arguably alleged acts or omissions "that a jury, court or arbitrator could find dishonest, fraudulent, criminal, malicious or was intentionally committed while knowing it was wrongful," *Def. Motion* [#35], Ex. A at 11, as it asserted claims of fraud and fraudulent concealment against Mr. Bowser. *Id.*, Ex. B. at 9-11.  Consistent with this, Defendant's letter denying Plaintiff's tender of the defense stated, "the policy does not provide defense or indemnity for acts deemed fraudulent. . . ."  *Pl. Motion* [#40], Ex. C at 10.

Plaintiff argues, however, that simply because certain claims may be excluded does not negate the duty to defend where other claims are potentially covered.  He asserts that the complaint in the Underlying Case included claims that would not fall within this exclusion, including the negligent misrepresentation claim.  *Pl. Mot.* [#40] at 18.  Defendant did not address this or dispute Plaintiff's contention.  *See Def. Resp Pl. Mot.* [#46].

The Court agrees with and accepts Plaintiff's argument.  The Colorado courts have held that "[i]f the underlying complaint asserts more than one claim, a duty to defend

---

[14] Moreover, Colorado law provides a mechanism through which Plaintiff could have sought modification of the award (but apparently chose not to).  *See* Colo. Rev. Stat. § 13-22-224.

against all claims asserted arises if any one of them is arguably a risk covered by the pertinent policy." *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998). Here, the underlying complaint asserts at least one claim against Mr. Bowser that would not appear to fall within the fraud exclusion; namely, the negligent misrepresentation claim. *Def. Motion* [#35], Ex. B at 8; *see also Pl. Resp. Def. Motion* [#41], Ex. 2, Johnson Dep. 41:5-43:5 (claim adjustor for Defendant testifying that he did not believe the allegations in the complaint in the Underlying Case would have warranted a denial of a defense based on that exclusion). The allegations in the complaint are thus not "solely and entirely" within the fraud exclusion, and the exclusion does not excuse Defendant's duty to defend. *Hecla Mining Co.*, 811 P.2d at 1090.

### b. The Agent Owned Property Exclusion

Having found that the fraud exclusion bars coverage under the Policy, the Court need not address Defendant's other assertion regarding an applicable exclusion. However, for purposes of completeness and because of the potential impact of this argument on Plaintiff's remaining claims, the Court now turns to Defendant's argument that it is entitled to summary judgment on the breach of contract claim because there is no Policy coverage under the **BROAD COVERAGE - AGENT OWNED PROPERTY** exclusion in the Policy's Endorsement. *Def. Motion* [#35], Ex. A at 37. The Policy states, "**We** are not obligated to pay **Damages** or **Defense Costs** or defend **Claims** for, arising directly or indirectly out of, or in any way alleging:

> **n.** Services involving property in which any of **You** have or had, or will have an ownership or equity interest, either direct or indirect, as an individual, partner, shareholder or fiduciary.

This exclusion does not apply to **Claims** involving only the sale (not purchase) of residential property owned in which **You** have or will have a financial interest if:

(1)     A written Home Inspection Report is issued by an ASHI, CREIA, NACHI, or NAHI member inspector;

(2)     An Approved Home Warranty is in place;

(3)     All state required property transfer disclosure statements are properly completed, signed, and delivered;

(4)     The property in which the insured holds an interest consists of 1-4 residential units.

*Id.* at 9 and 37.

The first issue is whether the Agent Owned Property Exclusion applies in this case to bar coverage or indemnity, as argued in Defendant's Motion.  While Defendant argues that this exclusion is applicable because Mr. Bowser owned the Home at the time of the sale to Plaintiff, *Def. Motion* [#35] at 18, it is undisputed that the Home was actually owned by Bowser, LLC, not Mr. Bowser.  *Id.* at 7 ¶ 12.  Plaintiff asserts that this means the exclusion is not applicable.  *Resp. Def. Motion* [#41] at 19.  Defendant disagrees, arguing that the exclusion applies because Mr. Bowser was indirectly an owner of the Home as a shareholder of Bowser LLC.  *Reply Def. Motion* [#45] at 16-17.

The Court finds that Mr. Bowser must be deemed to have an ownership interest for purposes of the exclusion.  The Policy states that an ownership or equity interest may be "either direct or indirect, as an individual, partner, shareholder or fiduciary services."  *Def. Motion* [#35], Ex. A at 37.  As it is undisputed that Mr. Bowser is the sole shareholder of Bowser, LLC, *id.* at 7 ¶ 13, he would have an indirect ownership/equity interest in the

House pursuant to the Policy.[15]  Accordingly, the Agent Owned Property exclusion applies, unless each of the four conditions set forth in the exception for the sale of property in which the insured has or will have a financial interest have been satisfied.  *Id.*, Ex. A at 37.

Among those conditions is the requirement that a home warranty be placed on the Home and, further, that Mr. Bowser properly completed all disclosures required under Colorado law.  *Def. Motion* [#35], Ex. A at 37.  It is undisputed that Mr. Bowser did not place a home warranty on the Home.  *Id.*, Ex. C, Bowser Dep. at 67:14-24.  Therefore, the second condition necessary to restore coverage for agent-owned property is not satisfied, and the exception to exclusion thus does not apply.

Although it is not necessary to address the other conditions of the exception to exclusion because the second condition does not apply, it also appears that the fourth condition regarding state-mandated disclosures does not apply.  Colorado law required the owner of the Home to disclose any known, latent defects to Plaintiff at the time the Home was sold.  *See Schnell v. Gustafson*, 638 P.2d 850, 852 (Colo. App 1991).  In awarding damages for intentional misrepresentation Judge Miller found that Mr. Bowser, "with *full knowledge* of [the] defects, *failed to disclose* any of those defects to the Lua's [sic]."  *Def. Motion* [#35], Ex. D (emphasis added).  Thus, Judge Miller specifically found that Mr. Bowser failed to disclose known defects to the Home during the sale to Plaintiff.  *Id.* Defendant asserts, and the Court agrees, that this finding suggests that Mr. Bowser did not

---

[15] While Plaintiff cited to the report of his expert, Zachary Wetzel, in support of this argument, the Court notes that Mr. Wetzel is the subject of Defendant's pending Motion to Exclude Expert Testimony [#34]. The Court has no need to consider Mr. Wetzel's report as the issue is resolved based on the undisputed facts.

properly complete the state required property transfer disclosure statements, which assertion Plaintiff has not contested.

In conclusion, regarding this issue, the Agent Owned property exclusion applies to bar coverage and indemnification, and the exception to such exclusion is not applicable. Defendant's Motion is thus granted as to this issue.

The applicability of the Agent Owned Property Exclusion as to coverage does not, however, resolve whether this exclusion excused Defendant from its duty to defend. The Court finds that Defendant was not excused from its duty to defend based on this exclusion because it has not established that the allegations in the complaint were "solely and entirely within this exclusion." *Hecla Mining Co.*, 811 P.2d at 1090. Again, an insured is not excused from the duty to defend unless there is no legal or factual basis upon which the insurer might eventually be held liable to indemnify the insured. *Id.*

The complaint in the Underlying Case did not allege that Mr. Bower was the owner of the Home; rather, it alleged that Bowser LLC owned the Home. *Pl. Mot.* [#40], Ex. 3 at 2 ¶ 8. It also did not allege that Mr. Bowser was "an individual, partner, shareholder or fiduciary" of Bowser LLC upon which Mr. Bowser could have been deemed to have an ownership interest in the Home. *See id.* Thus, Defendant has not established that the allegations of the complaint fell "solely and entirely within" the exclusion." *Hecla Mining Co.*, 811 P.2d at 1090. Further, even if the exclusion could have been triggered, there were no allegations from which Defendant could have determined whether the conditions to the exception for exclusion were fulfilled, including whether a home warranty was in place or whether the "state required property transfer disclosure statements" were "properly

completed, signed, and delivered." *Pl. Mot.* [#40], Ex. 3; *Def.'s Mot.*, Ex. A at 37.[16]

Defendant's Motion is thus granted as to its argument that there is no coverage under the Policy based on the Agent Owner Property exclusion. It is denied as to the argument that this exclusion excuses Defendant's duty to defend. As no exclusions apply to excuse Defendant's duty to defend, Plaintiff's Motion is granted.

## B.    Plaintiff's Remaining Claims

Finally, Defendant argues that since there is no coverage, Plaintiff's common law and statutory claims for bad faith fail as a matter of law. *Def. Motion* [#35] at 19-20. This argument is granted in part and denied in part.

As the Court has found that there is no coverage under the Policy, Defendant's Motion [#35] is granted as any allegations in the bad faith claims related to coverage issues. However, Defendant's Motion [#35] is denied to the extent the bad faith claims relate to Defendant's obligations in connection with its duty to defend. Whether an insurer "acted unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy is "a question of fact for the jury." *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, (Colo. App. 2008)

_____

[16] To the extent that Defendant relies on an exception to the complaint rule found by the Tenth Circuit in *Pompa v. American Family Mut. Ins. Co.*, 520 F.3d 1139, 1147-48 (10th Cir. 2008) for the consideration of extrinsic evidence about whether a home warranty existed on the Home, the Court finds no reason to consider this exception. This is not a situation, as in *Pompa*, where the insured had "no reasonable expectation of a defense" because this fact (the absence of a home warranty) "removes the act in question from coverage." *Id.* This fact is not relevant to the issue of coverage under the exclusion, only to whether an exception to the exclusion exists. *Def. Motion* [#35], Ex. A at 37. The Court has found that the complaint in the Underlying Case did not establish that the exclusion was applicable, so there is no reason for the Court to consider evidence relevant to the exception to the exclusion.

## IV. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that Defendant's Motion [#35] is **GRANTED IN PART AND DENIED IN PART**.  It is granted as to the argument that there is no coverage under the Policy, but denied to the extent that Defendant seeks summary judgment on Plaintiffs' claims.

IT IS FURTHER **ORDERED** that Plaintiff's Motion [#40] asserting that Defendant breached its duty to defend is **GRANTED**.

Dated:  October 8, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge