IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01233-KLM

JUAN CARLOS LUA, as assignee of David Bowser,

    Plaintiff,

v.

QBE INSURANCE CORPORATION, a foreign corporation,

    Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant QBE Insurance Company's **Motion to Exclude Expert Testimony Pursuant to Fed. R. Evid. 702** [#34][1] (the "Motion"). The Court has reviewed the Motion [#34], the Response [#39], the Reply [#42], the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#34] is **GRANTED IN PART, DENIED IN PART, AND DENIED AS MOOT IN PART**.

## I. Background

This is a breach of insurance contract and bad faith lawsuit arising out of an underlying lawsuit and arbitration (the "Underlying Case") involving, *inter alia*, claims of fraud, intentional misrepresentation, and the failure to disclose known defects by David

---

[1] "[#34]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

Bowser ("Bowser") in the sale to Plaintiff Juan Carlos Lua ("Plaintiff") of a residential home. *Motion* [#34] at 1. Mr. Bowser was the listing agent for the Home. *Id.* Upon being served with the underlying complaint, Mr. Bowser tendered the matter to QBE Insurance Company ("Defendant") pursuant to the claims-made Errors & Omissions liability insurance policy (the "Policy") issued to him. *Id.* at 1-2. Defendant denied coverage for the underlying matter. *Id.* at 2.

Thereafter, Plaintiff and Mr. Bowser entered into an agreement in which Mr. Bowser admitted liability in the Underlying Case and assigned to Plaintiff his rights under the Policy. *Motion* [#34] at 2. Plaintiff and Mr. Bowser agreed to have the amount of damages determined in binding arbitration. *Id.* Plaintiff presented an uncontested case in support of his alleged damages, and called three witnesses to testify: Plaintiff; Plaintiff's spouse, Perla Gonzalez; and Plaintiff's expert witness, Robert H. Pratt. *Id.* Plaintiff was awarded $594,132.85 on the claim for intentional misrepresentation. *Id.*

Following the arbitration award, Plaintiff, as assignee of Mr. Bowser, filed the instant lawsuit against Defendant for breach of contract, common law bad faith, and statutory damages under Colo. Rev. Stat. §§ 10-3-1115 and 1116. *Motion* [#34] at 3.

The Motion [#34], pursuant to Fed. R. Evid. 702, asserts that Plaintiff's expert Zachary Warzel's opinions concerning the purported standards of care applicable to Mr. Bowser's claim under the professional liability policy and the reasonableness of Defendant's conduct under those standards should be stricken as unreliable and as improper legal conclusions. *Id* at 3. The Motion also seeks to strike experts Peter

Marxenhausen and Bernard Kintnerfor,[2] endorsed to testify as to the reasonableness of the arbitration award, because they did not testify at the arbitration and their opinions are not relevant to the coverage dispute. *Id.*

Relevant to the Motion [#34], on October 8, 2019, the Court granted Plaintiff's Motion for Partial Summary Judgment [#40], finding that Defendant had a duty to defend the Underlying Case. *Order on Summary Judgment* [#64], at 27. The Court granted in part and denied in part Defendant's Motion for Summary Judgment [#35], finding that there was no coverage under the Policy under the agent-owned property and fraud exclusions, but that the lack of coverage under these exclusions did not excuse Defendant's duty to defend. *Id.*

## II. Legal Standard

Admission at trial of expert testimony is governed by Fed. R. Evid. 702 and requires a two-step analysis. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). "First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Id.* (citation omitted). "Second, if the expert is sufficiently qualified, the court must determine whether the opinion is reliable under the principles set forth in *Daubert*. *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).

A judge thus has a "gatekeeping role" in deciding whether to admit or exclude expert testimony, and must determine that the testimony is both reliable and relevant. *Daubert*,

---

[2] Defendant misspelled Peter Marxenhausen's last name. *See* Plaintiff's Rule 26(a)(2) Disclosures. *Motion* [#34], Ex. D at p. 3. Defendant's reference to Bernard Kintner is correct per Plaintiff's Disclosures. *Id.* However, as Plaintiff now refers to this expert as Bernard Kintnerfor, *Resp. to Motion* [#39] at 1, the Court uses that name.

509 U.S. at 589, 597. An opinion is reliable if the reasoning or methodology of the expert is valid and "can be applied to the facts in issue." *Id.* at 592.[3] An opinion is relevant if it "'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (citation omitted).

Ultimately, the determination of whether expert testimony should be admitted is within the sound discretion of the trial court. *Vining v. Enterprise Fin. Group*, 148 F.3d 1206, 1218 (10th Cir. 1998). "'[T]he rejection of expert testimony is the exception rather than the rule.'" *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quoting Fed. R. Evid. 702 advisory committee's note). "'[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing id.)

### III. Analysis

**A. Expert Zachary Warzel**

Defendant asserts that Zachary Warzel ("Warzel") is endorsed by Plaintiff to provide opinions concerning the purported standards of care applicable to Mr. Bowser's claim under the professional liability policy and the reasonableness of Defendant's conduct under those alleged standards. *Motion* [#34], at 2-3, Ex.3. Defendant first seeks to strike a number of opinions of Mr. Warzel (opinions a. through w.) on the basis that they are "nothing more

---

[3] Appropriate validation under *Daubert* requires that the proposed expert testimony be supported by "'good grounds,' based on what is known." 509 U.S. at 590.

than a recitation of Colorado law" and encroach "'on the trial court's authority to instruct the jury as to the applicable law.'" *Motion* [#34] at 4-8 (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988)). Rather than "parse" through the opinions in paragraphs a. through w. or other disputed paragraphs "line-by-line", the Court sets forth guidelines that will govern Mr. Warzel's testimony at trial regarding the disputed issues. *See King v. Allstate Ins. Co.*, No. 11-cv-00103-WJM-BNB, 2013 WL 3943607, *5 (D. Colo. July 31, 2010). As noted in *King*, "an expert's testimony at trial rarely mirrors the precise wording, structure or organization of his expert report." *Id.*

The Court finds that many of the opinions of Mr. Warzel that Defendant seeks to exclude are now moot in light of the Court's Order on Summary Judgment [#64]. These include any opinions regarding: (1) coverage and the duty to indemnify under the Policy; (2) whether the duty to defend was breached; and (3) whether the complaint rule applies to the duty to defend and the applicability of any exceptions. Related to the latter argument, Defendant's argument that Mr. Warzel's opinions in paragraphs (n), (o), (p), (r), and (v) are incomplete and/or inaccurate under Colorado law because they do not take into account the exceptions to that complaint rule is also moot. *Motion* [#34] at 9-10. Similarly, Defendant's argument as to opinions x. through cc., *Motion* [#34] at 11-12, is largely moot as these paragraphs opine as to the duty to defend and the applicability of the exclusions on that issue.[4]

---

[4] Opinion y., which states that Mr. Bowser, not Bowser LLC, is the named insured on the Policy, *Motion* [#34] at 11, is simply a statement of fact. The Motion [#34] is denied to the extent that it seeks to exclude this or other factual statements by Mr. Warzel about the Policy.

Mr. Warzel's testimony is also relevant, however, to the remaining bad faith claim regarding Defendant's duty to defend and whether Defendant acted unreasonably in connection with that issue. Defendant seeks to exclude Mr. Warzel's opinions in paragraphs a. through w., asserting they are largely expressed as a recitation of law and the legal principles applicable to insurance contracts generally, the duty to defend, and other relevant issues. *Motion* [#34] at 4-8. Defendant also seeks to exclude several opinions of Mr. Warzel that allegedly address the ultimate issue, *i.e.,* whether Defendant's actions were reasonable and/or show that Defendant acted in bad faith. *See Motion* [#34] at 11-12 (seeking to exclude opinions dd. through ii). As explained below, the Motion [#34], which seeks to preclude such opinion testimony from Mr. Warzel as a whole as to these issues, is denied.

Opinions that merely inform the jury as to the law and the legal principles are generally subject to exclusion as "encroach[ing] on the trial court's authority to instruct the jury on the applicable law, for it is axiomatic that the judge is the sole arbiter of the law and its applicability." *Specht*, 853 F.2d at 807.[5] This does not mean, however, that "all testimony regarding legal issues is excluded." *Id.* at 809. Testimony regarding such issues may be proper "if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Id.* As the *Specht* court explained:

> We recognize that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a

---

[5] *Specht* found that expert testimony regarding an "array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof" was improper as it "allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence." *Id.* at 808.

witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms. For example, we have previously held that a court may permit an expert to testify that a certain weapon had to be registered with the Bureau of Alcohol, Tobacco, and Firearms. *United States v. Buchanan,* 787 F.2d 477, 483 (10th Cir.1986). In that case, however, the witness did not invade the court's authority by discoursing broadly over the entire range of the applicable law. Rather, the expert's opinion focused on a specific question of fact.

*Id.* at 809.

In the context of insurance industry standards that Plaintiff asserts Mr. Warzel will testify about, a court may exclude testimony seeking to "compare[] the insurance company's actions to the industry standard" where a jury would be "fully capable of deciding [the] case without expert testimony. . . ." *Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th Cir. 2009); *see also O'Sullivan*, 233 F. Supp. 3d at 926. However, as noted by the Colorado Supreme Court, "[e]xperts routinely testify as to whether a defendant's conduct violated the accepted standards of practice" in various professions. *Southerland v. Argonaut Ins. Co.*, 794 P.2d 1102, 1107 (Colo. 1990). The Court found there is "no error with an expert applying the legal or industry standards to the facts in determining if a defendant's conduct was violative of the standards of a profession or industry." *Id.*

Consistent with this, courts in this jurisdiction have routinely allowed experts in bad faith cases to testify regarding industry standards and whether they were breached, as well as to ultimate issues regarding the reasonableness and propriety of the insurer's conduct. *See, e.g, Vining*, 148 F.3d at 1212, 1218 (affirming trial court's admission of expert on handling and management of claims who testified that conduct of insurer was inappropriate); *Ford v. Allied Mut. Ins. Co.*, 72 F.3d 836, 841 (10th Cir. 1996) (affirming

admission of expert testimony on insurance industry standards relevant to bad faith, including "industry practice that before there is coverage under UIM, one looks at the total coverage available at that time" and testimony that "the industry regards the insured as being in an arm's length relationship vis-a-vis the company"); *O'Sullivan*, 233 F. Supp. 3d at 922 (admitting expert testimony as to industry standards and claims handling); *King*, 2013 WL 3943607 at *5 (allowing testimony that "certain actions taken by Defendant were reasonable and/or show that Defendant did not act in bad faith"); *Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Group*, 343 F. Supp. 2d 989, 1015 (D. Kan. 2004) (allowing expert opinions "relating to industry standards and practices and whether Liberty Mutual's conduct conformed to such standards[]".[6] The Court finds such cases persuasive, and believes that similar testimony by Mr. Warzel may be relevant and helpful to the jury.

Defendant argues, however, that "Mr. Warzel does not even attempt to explain the existence of these purported 'industry standards' beyond their reference in various Colorado statutes and case law." *Motion* [#34] at 8. Mr. Warzel admits in his report that the industry standards are governed in part by legal rules, explaining:

> My opinions . . . are not intended to usurp the function of the Court, but are stated only as the predicate to my opinions about QBE's violation of industry standards. The insurer's decision on whether to defend is controlled and shaped by the legal rules pertaining to the duty to defend in Colorado and the rules of policy interpretation, and in this sense the legal rules are the "industry standards" to which the insurer is required to adhere.

---

[6] *See also Novell v. American Guar. & Liability Ins. Co.*, 15 P.3d 775, 778-79 (Colo. App. 1999) (affirming admission of expert testimony regarding unreasonable conduct by insurer's representatives); *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 971 (Colo. App. 1996) (stating that while "an expert witness should not dictate the law that the jury should apply, an expert witness is permitted, in the trial court's discretion, to refer to the facts of the case in legal terms", and affirming admission of expert testimony that insurer's conduct violated Colorado's Unfair Claims Settlement Practices Act).

*Resp.* Motion [#39] at 8 and Ex. C at 10 n. 1. The issue then becomes whether such testimony is proper. The Court finds Judge Martínez's decision in *King* instructive on this issue.

In *King*, the expert's report contained an analysis of bad faith cases, and the plaintiff challenged the opinions to the extent they provided commentary on the law. 2013 WL 3943607, at *5. Judge Martínez found that it is the Court's role to instruct the jury on the law governing the case, and that he would not permit the expert to "testify about the meaning" of those cases. *Id.* Judge Martínez noted, however, that "the standards that govern the industry standards are, at least to some extent, formed by . . . case law", and that the cases "may inform [the expert's] opinions." *Id.* He held in *King* that while the expert could testify "about his understanding of the law and how it impacts his understanding of the standards that govern the insurance industry", the expert could not testify "about the holding in a particular case and apply[] the rule of that case to the facts at issue here." *Id.*

*King* is also instructive regarding Defendant's argument that Mr. Warzel's opinions touch on the ultimate issue about the reasonableness of its conduct. Judge Martínez allowed such opinions in *King*, noting that "[i]t is well-settled that an expert opinion is not inadmissible simply because it embraces an ultimate issue to be determined by the trier of fact." 2013 WL 3943607, at *5. However, "[g]iven the close intersection between portions of [the expert's] testimony and the Court's role in instructing the jury", Judge Martínez stated the Court would give a limiting instruction prior to the expert's testimony.[7]

---

[7] The instruction to be given would "make clear that the Court will instruct the jury on the law and, to the extent that [the expert's] testimony differs from the Court's instructions, the jury must

The Court agrees with the result reached in *King* and adopts its holding in this case. Mr. Warzel is thus permitted to testify generally about his understanding of the law and how it impacts his understanding of the standards that govern the insurance industry. He may also offer opinions about the reasonableness of Defendant's conduct in relation to Plaintiff's bad faith claims. Mr. Warzel's testimony must, however, be narrowly tailored, and must not usurp the court's duty to set forth the law or impact the jury's ability to apply the law to the evidence. He may not testify about specific cases and how they apply to the facts at issue.

Consistent with *King*, the Court will give a limiting instruction prior to Mr. Warzel's testimony. The parties are directed to submit to the Court at the Final Pretrial Conference on October 23, 2019, a stipulated limiting instruction along the lines of that discussed in *King*. 2013 WL 3943607, at *5.

Defendant next argues that Mr. Warzel's contention in paragraph (h) regarding the Unfair Claims Settlement Practices (the "Act") is inadmissable as inconsistent with Colorado law. *Motion to Exclude* [#34] at 5, 9 (citing *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333 (Colo. 2004)). Mr. Warzel states in that paragraph that violations of the Act "are admissible to prove the unreasonableness of an insurer's conduct," citing Colo. Rev. Stat. § 10-3-1113(1). The Court first notes the holding in *Allen* that the Act "does not establish a standard of care actionable in tort" but "may be used as valid, but not conclusive, evidence of industry standards . . . ." *Id.* at 339. To the extent Mr. Warzel discusses the Act as relevant to industry standards, his testimony must comport with that ruling. Thus,

---

credit the Court's instructions over such testimony." *Id.* The instruction would "also inform the jurors that they may give [the expert's] testimony whatever weight they deem appropriate, and that they are the ultimate finders of fact" in the case. *Id.*

Mr. Warzel may not testify that the Act establishes the standard of care, but may testify that the Act is valid, but not conclusive, evidence of the industry standard.[8]

The Court now turns to Defendant's argument that Mr. Warzel's opinion in paragraph (a) that Colorado law has "approved" the type of agreement entered into by Plaintiff and Mr. Bowser is inaccurate insofar as it suggests that all such agreements have been given blanket approval under Colorado law. *Motion to Exclude* [#34] at 9. Defendant argues that the validity of these types of agreements have recently been called into question, noting the risk they pose of resulting in collusive and/or unreasonable agreements between insured and claimants. *Id.* (citing *Travelers Prop. Cas. Co. of Am. v. Stresscon Corp.*, 270 P.3d 140, 145-146 (Colo. 2016)).

The Court addressed this type of agreement in its summary judgment ruling, stating that such an agreement is "generally enforceable if . . . '[if] the third party successfully litigate[s] any of the bad faith claims against the[] insured by means of an assignment of claims[.]'" *Order on Summary Judgment* [#64] at 6 n. 8 (quoting *Nunn v. Mid-Century Insurance Company*, 244 P.3d 116, 120-21 (Colo. 2010)). The Court recognized "that such agreements may 'present[] legitimate concerns regarding the possibility of fraud or collusion,'" and stated that those issues "'can be addressed at trial like any other issue.'" *Id.* (quoting *id.* at 123). Neither the opinion of Mr. Warzel nor the *Stresscon* case are inconsistent with the Court's ruling, and the Motion to Exclude [#34] is thus denied as to

---

[8] To the extent Plaintiff is claiming a statutory violation of the Act which requires willfulness, *see* Colo. Rev. Stat. § 10-3-1113(4); CJI-Civ. 25:6 (2018 ed); Defendant asserts that Mr. Warzel's report does not state or contend that Defendant engaged in any willful violations of the Act. *Motion to Exclude* [#34] at 9. Plaintiff does not address this issue in his Response to Defendant's Motion [#39], and the Court is unable to determine how, if at all, Mr. Warzel's testimony is pertinent to this issue. The Motion to Exclude is thus denied without prejudice as to this limited issue.

Defendant's argument on this issue.

Finally, the Court grants the Motion [#34] as to Mr. Warzel's opinion offered in paragraph jj. that "Mr. Bowser purchased Errors & Omissions insurance coverage to protect him (and to provide for recovery from those he might harm in the course of his business) from claims related to his professional activities." *See id*. at 15, Ex. C at 2. The Court agrees with Defendant that this opinion is based on "subjective belief or unsupported speculation" about why Mr. Bowser purchased insurance. *Daubert*, 509 U.S. at 590. Neither Plaintiff nor Mr. Warzel identify any factual basis for Mr. Warzel's opinion purporting to explain Mr. Bowser's subjective intent, and Plaintiff did not address this in the Response to the Motion [#39].

**B.     Experts Peter Marxenhausen and Bernard Kintnerfor**

Finally, Defendant argues that the opinions of Peter Marxenhausen ("Marxenhausen"), a structural engineer, and Bernard Kintnerfor ("Kintnerfor"), a contractor, should be precluded because they did not testify during the underlying arbitration, and the arbitration judge made no reference to their purported opinions in issuing his damages award. *Motion to Exclude* [#34] at 16 and Exs. A and B. Defendant asserts that any attempt by Plaintiff to expand the evidence of claimed defects and damages in the underlying case through the experts' testimony is improper, as such opinions are not relevant to determining whether the arbitration award is covered by the policy. *Id*. at 16. Plaintiff asserts in his Response to Defendant's Motion [#39] that it is Defendant who made the experts' anticipated testimony both relevant and necessary through its decision in the Answer to contest the enforceability of the settlement agreement and the reasonableness of the arbitration award. *Id.* at 3; *Answer to Pl. First Am. Compl* [#29] ("Answer") at 5-6 ¶¶

16-18. Plaintiff argues that it is therefore for the jury to determine the amount of damages, if any, for which Defendant may be held responsible should the Court determine that Defendant had a duty to defend in the underlying Case, and that he is not precluded from introducing testimony from the experts in establishing such damages. *Resp. to Motion* [#39] at 3.

The Court finds that the Motion to Exclude [#34] should be denied as to the opinions of Mr. Marxenhausen and Mr. Kintnerfor. It is true that the arbitration award is controlling in connection with coverage and the insurer's duty to indemnify, and the insured is not permitted to rely on evidence to contradict the findings in the underlying matter or retry the case. *See Am. Fire and Cas. Co. v. BCORP Canterbury at Riverwalk, LLC*, 282 F. App'x 643, 648-49 (10th Cir. 2008) (finding in coverage litigation that the district court erred in considering affidavits that were not presented to the state court jury because they did not "clarif[y] whether the judgment—'the actual liability imposed'—falls within the policy's coverage") (citation omitted).

Here, however, coverage has been decided in favor of Defendant. *Order on Summary Judgment* [#46] at 27. Plaintiff is not seeking indemnification, and the case is proceeding on Plaintiff's claim for breach of the duty to defend and bad faith claims in connection with that duty. *Id.* Plaintiff's designation of Mr. Marxenhausen and Mr. Kintnerfor thus does not violate the above rule.

Moreover, Defendant has cited no authority for its argument that Plaintiff is precluded from having witnesses who did not testify at the arbitration testify as to the reasonableness of the arbitration award that Defendant contests in its Answer [#29], and the Court rejects Defendant's argument. A witness who testified at the arbitration has no

greater authority to testify as to the reasonableness of the award than any other duly-qualified witness. In fact, such a witness could be viewed by the jury as attempting to improperly bolster the reasonableness of the arbitration award through his or her knowledge of the arbitration.

Finally, the amount of the arbitration award and its reasonableness are relevant to the damages for breach of the duty to defend and the bad faith claim related thereto. *See Greer v Northwestern Nat. Ins. Co.*, 743 P.2d 1244, 1250 (Wash. 1987) (recoverable damages for bad faith breach of the duty to defend "include, among other items, (1) the amount of expenses, including reasonable attorney fees, the insured incurred in defending the underlying action, and (2) the amount of the judgment entered against the insured in the underlying action") (citing 14 G. Couch, at §§ 51:157–159); *see also Bainbridge, Inc. v. Travelers Cas. Co.*, 159 P.3d 748, 756 (Colo. App. 2006). As explained by the Fifth Circuit:

> It is well settled that once an insurer has breached its duty to defend, the insured is free to proceed as he sees fit; he may engage his own counsel and either settle or litigate, at his option. . . . Having forfeited its right to conduct the defense, the insurer is bound by the settlement or judgment. . . . A consequence of breach, therefore, is that an insurer who wrongfully fails to defend its insured is liable for any damages assessed against the insured, up to the policy limits, subject only to the condition that any settlement be reasonable.

*Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983) (internal citations and footnote omitted).

As Defendant asserts that the arbitration award was not reasonable, *Answer* [29], the parties may present evidence on this issue at trial relevant to damages. The reasonableness of the arbitration award, as well as whether the agreement between

Plaintiff and Mr. Bowser was collusive, are question of facts in this case to be determined by the jury. *Nunn*, 244 P.3d at 123-24.

Accordingly, the Motion to Exclude is denied as to the opinions of Mr. Marxenhausen and Mr. Kintnerfor.

### IV. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion to Exclude [#34] is **GRANTED IN PART, DENIED IN PART, AND DENIED AS MOOT** consistent with this Order.

IT IS FURTHER **ORDERED** that a proposed stipulated limiting instruction for Mr. Warzel's testimony shall be submitted at the Final Pretrial Conference on October 23, 2019.

Dated: October 11, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge